[No. A067522. First Dist., Div. Five. Aug. 9, 1995.]

LAFAYETTE MOREHOUSE, INC., et al., Plaintiffs and Appellants, v. CHRONICLE PUBLISHING COMPANY et al., Defendants and Respondents.

COUNSEL

Richard W. Hyland and Walter P. Maksym for Plaintiffs and Appellants.

Cooper, White & Cooper, James M. Wagstaffe and Mark L. Tuft for Defendants and Respondents.

OPINION

**PETERSON, P. J.**—In 1992, California enacted an anti-SLAPP statute. (Stats. 1992, ch. 726, § 2; Code Civ. Proc.,[1] § 425.16.) SLAPP is an acronym for Strategic Lawsuit Against Public Participation. SLAPP litigation, generally, is litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants. (*Hull* v. *Rossi* (1993) 13 Cal.App.4th 1763, 1769 [17 Cal.Rptr.2d 457]; cf. *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 815-816 [33 Cal.Rptr.2d 446] (*Wilcox*).)

Anti-SLAPP statutes such as section 425.16 provide a procedural remedy to expose and dismiss at an early stage such nonmeritorious actions which

---

[1]Unless otherwise indicated, all subsequent statutory references are to the Code of Civil Procedure.

chill, inter alia, "the valid exercise of the constitutional rights of freedom of speech . . . ." (Subd. (a).) Section 425.16, subdivision (b) does so by making "[a] cause of action against a person arising from any act of that person in furtherance of the person's [constitutional] right of . . . free speech . . . in connection with a public issue . . . subject to a special motion to strike," unless the person asserting that cause of action establishes by pleading and affidavit a "probability" of prevailing thereon.

In this appeal, we hold: (1) the corporate publisher of a newspaper and its reporters, who are sued for libel based on published articles made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, are all persons who may lawfully invoke the provisions of section 425.16; (2) on this record, appellants failed to show a probability they would prevail on their libel cause of action against respondents, and the trial court properly granted respondents' special motion to strike the cause of action under section 425.16.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from the trial court's decision to dismiss a libel complaint filed by More University and several affiliated persons and entities, against the company which publishes the San Francisco Chronicle and several of its reporters.

More University was founded in the late 1960's as an outgrowth of the alternative living experiments of the time. Located near Lafayette,[2] the university describes itself as a "unique" institution, which was established to "expand the physical, spiritual, and intellectual capacities" of its students, while maintaining "tolerance for all apparent alien encounters." The university offers courses in a variety of traditional disciplines such as art, music, and philosophy. However, the university also offers somewhat unique degrees in the areas of "sensuality," "lifestyles," and "communication." Students studying in these latter disciplines take courses in areas such as "niceness & meanness," "teasing," "sensuality," and "mutual pleasurable stimulation of the human nervous system." Through study and course work

---

[2] We say that More is located near Lafayette; however, it is not clear whether this is technically true. More admits that it formerly occupied the Lafayette site, but it contends that it does not currently operate there. More's college catalogue, however, continues to represent that classes are offered at the Lafayette site. We need not resolve the ambiguity to decide this appeal.

(both in class and at home), students can obtain advanced degrees in these fields, such as a Ph.D. in "sensuality."

In early 1992, persons living on the More University property permitted a large number of homeless to live in tents on the site. This influx caused a corresponding increase of complaints from neighbors who alleged they were subjected to the annoying and sometimes criminal behavior of these new residents. Store owners experienced a sharp increase in the number of aggressive panhandlers and persons harassing their customers. Homeowners reported cases of public urination and public intoxication. Other homeowners complained of an increase in litter and petty crime. A local police lieutenant reported a "significant" increase in the number of problems related to the More University property, including felony assaults, panhandling, and abandoned vehicles in residential and commercial areas.

The Contra Costa County Board of Supervisors responded to these and other complaints by holding a series of public hearings beginning in May 1992, to discuss whether this use of the More University property violated local health, land-use, or other governmental regulations. As a result of those hearings, the board of supervisors determined that permits were needed since the activities violated local zoning laws. When More University officials refused to comply with the permit process or to cease the challenged activity, the county filed an action in state court to enjoin the alleged violations. More and various related entities responded by filing their own civil rights suit in federal court alleging the county's enforcement action violated their right to free expression and privacy.

Beginning in June 1992, the San Francisco Chronicle published a series of articles which described the dispute we have set forth above. The articles reported the influx of homeless living at the More University site and the corresponding increase in complaints from neighbors. The articles also discussed the board hearings which were held to discuss the problem, the county's enforcement action, and the university's complaint in federal court. The reporters who wrote the articles sometimes used colorful language in describing the dispute and the parties, e.g., characterizing More as a "sensuality school" and stating that it offered a "unique course in carnal knowledge." In addition, the articles characterized Victor Baranco, the founder of More, as a "reclusive guru" and accurately reported that he and his wife, Cynthia, were the subject of an LSD drug prosecution in Hawaii. The articles also reported the allegations of a former student, Alan Steele, who said that More coerced students into prostitution and provided them with

LSD and other illegal drugs. Furthermore, the article accurately reported that More had filed a libel suit against Steele arising from his allegations.

More and various other persons and entities who were mentioned in the articles filed a complaint against the Chronicle and the reporters who wrote them.[3] As eventually amended, the complaint alleged seven causes of action; however, only one of them is relevant on the present appeal. More alleged that the newspaper articles were libelous.

The Chronicle responded to the complaint by filing a special motion to strike under section 425.16.[4] Consistent with the language in that section, the Chronicle argued that More could not establish there was a probability it would prevail on the complaint because, among other things, the articles were neither false nor defamatory. After hearing and argument, the trial court agreed and granted the special motion to strike, ruling that More had failed to present proof of falsity.

More then asked the court to reconsider its ruling, and it filed numerous declarations in support of its request. After argument, the court denied the motion, finding that More had failed to present evidence of falsity, and that

[3] The complaint names as plaintiffs Lafayette Morehouse, Inc., which does business as More University; Dr. Victor Baranco; Dr. Cynthia Baranco; and three additional corporate entities, Humore Inc., the Private Sector, and Turn On To America. The latter three corporations are apparently affiliated with More and helped provide assistance to the homeless living on the More University property. Two of them, the Private Sector, and Turn On To America, were mentioned in the articles in question.

The named defendants are the Chronicle Publishing Company, the entity which publishes the Chronicle; and the reporters who wrote the articles, Dan Reed, April Lynch, and Alice Kahn.

Unless otherwise indicated, we will refer to the plaintiffs collectively as More and to the defendants as the Chronicle.

[4] Section 425.16 provides in pertinent part as follows: "(b) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. [¶] . . . [¶] (e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."

it had not presented a prima facie case of actual malice. This appeal followed.

## II. DISCUSSION

### A. *Applicability of Section 425.16 to a Case Involving Media Defendants*

■ The first issue is whether the trial court properly applied section 425.16 to the present suit. More argues that the statute was adopted to deal only with the problems presented by archetypal SLAPP suits, and that it should not be interpreted to apply to a libel suit brought against media defendants based on their news reporting activities.

In assessing the correctness of More's contention that section 425.16 must be interpreted to exclude the applicability of its special motion to strike procedure to a publisher of a newspaper and its reporters sued for libel in the circumstances of this case, we are governed by familiar rules of statutory interpretation. Our primary duty when interpreting a statute is to effectuate the Legislature's intent. (*Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764 [274 Cal.Rptr. 787, 799 P.2d 1220].) When the language of a statute is clear and unambiguous, there is no need for interpretation and we must apply the statute as written. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373]; see also *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1105, fn. 8 [17 Cal.Rptr.2d 594, 847 P.2d 560].) With these rules in mind, we turn to the statute at hand.

Section 425.16, subdivision (b) states, in part, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

We find this plain language applies to the present libel cause of action brought against the Chronicle based on its news reporting activities. First, More does not seriously contend, and we do not find, that the statute's reference to "persons" renders it inapplicable. Section 17 specifically states that when the term "person" is used in a statute, it also applies to corporations; and the fact that the Chronicle Publishing Company is a corporation does not exclude it from the ambit of the statute.

The principal issue then is whether the present suit arose from an act of the Chronicle "in furtherance of [its] right of . . . free speech under the

United States or California Constitution in connection with a public issue." This quoted phrase is specifically defined by section 425.16, subdivision (e) to include, inter alia, "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."[5] "Connected" is defined as "united by . . . dependence or relation." (Black's Law Dict. (6th ed. 1990) p. 302, col. 2.) The articles in question reported on the dispute between More and its neighbors over More's decision to open its property to the homeless and the related hearings held by the Contra Costa County Board of Supervisors to discuss that problem, the county's enforcement action, and More's responsive federal suit. They were clearly united by dependence on or relation to the official executive, legislative, and judicial actions they described. In sum, the alleged libelous newspaper articles were "writing[s] made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e)), triggering the application of the special motion to strike procedure of section 425.16, subdivision (b), if the Chronicle chose to make it.

The conclusion we reach here is supported by at least one commentator who has examined the issue. Michael D. Stokes, an attorney, helped draft portions of the Senate bill which eventually added section 425.16 to the Code of Civil Procedure; and shortly after the bill was signed by the Governor, he wrote an article discussing the legislation. Among other things, Stokes noted that the bill had received support from an impressive array of newspapers who represented interests across the political spectrum. Stokes explained this support by observing that the language of the statute was broad enough to cover news reporting activity and that newspapers and publishers, who regularly face libel litigation, would be one of the "prime beneficiaries" of section 425.16. (See Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992* (Cont.Ed.Bar 1992) 14 Civ. L. Rep. 485, 487.) Whether newspapers and publishers will, in fact, be the prime beneficiary of the statute remains to be seen. Stokes's conclusion, that the statute can be applied to media defendants, is consistent with

---

[5]We do not decide whether, as the Chronicle urges, the newspaper articles generating More's claim of libel constitute a "right of free speech" because they allegedly fit another category of that phrase defined by section 425.16, subdivision (e), viz.: "any written or oral statement or writing made in a *place open to the public or a public forum* in connection with an issue of public interest." (Italics added.) We find this alternate horn of the Chronicle's rationale for its authority to invoke the special motion to strike provided by section 425.16, subdivision (b) somewhat dubious. No authorities have been cited to us holding a newspaper printing allegedly libelous material is a "place open to the public or a public forum." Newspaper editors or publishers customarily retain the final authority on what their newspapers will publish in letters to the editor, editorial pages, and even news articles, resulting at best in a controlled forum not an uninhibited "public forum."

our analysis, although he is somewhat critical of that conclusion, primarily because of his fears about discovery limitations when the statute is applied to media defendants. We address this issue, *post.*

More contends section 425.16 should not have been applied in the current case because news reporting activities are commonly thought to be protected by the constitutional guarantee of "freedom of the press." It argues that had the Legislature intended the statute to cover suits against the news media, it would have used the words "freedom of the press" not "freedom of speech" when defining the activities to which the statute applies. However, the issue here is not whether the Legislature should have used different language if it intended the statute apply to news reporting activity, but whether the statute, as written, covers such activity. As we have explained, the statute does cover the type of reporting activity at issue here. Furthermore, More's argument is based on a faulty premise, i.e., that news reporting activity cannot be characterized as "free speech." In fact, courts have consistently described such activity as "free speech." (See, e.g., *Philadelphia Newspapers, Inc.* v. *Hepps* (1986) 475 U.S. 767, 775-776 [89 L.Ed.2d 783, 791-792, 106 S.Ct. 1558] [newspaper articles equated with free speech]; *Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495, 501 [96 L.Ed. 1098, 1105-1106, 72 S.Ct. 777] [newspapers characterized as a form of "expression"]; *Daily Herald Co.* v. *Munro* (9th Cir. 1988) 838 F.2d 380, 384 [media plaintiffs' broadcast of the results of exit polling is free speech].)

More also argues section 425.16 was not intended to apply to media defendants in libel actions, but only to situations such as that which the court in *Wilcox, supra,* 27 Cal.App.4th at pages 815-816 characterized as a "paradigm SLAPP" suit, a suit filed by a powerful land developer against individuals or organizations politically or legally opposed to the development. As the *Wilcox* court noted, however, such suits are not limited to environmental issues, nor are SLAPP suits always filed by powerful and wealthy plaintiffs against impecunious protesters who annoy, delay, or frustrate plaintiffs' objectives. (*Ibid.*)

We conclude the trial court properly applied section 425.16 to the present dispute.

B. *Challenges to the Constitutionality of Section 425.16*

More raises a series of constitutional challenges to the application of section 425.16.

### 1. *The Statute Does Not Deprive More of Equal Protection Because It Is Rationally Related to a Legitimate Legislative Goal*

█ More first contends that the statute infringed upon its ability to access the judicial system and, thus, violated its right to equal protection. We disagree. Statutes that classify litigants and impose differing procedural requirements are generally valid so long as classification is supported by a rational basis. For example, in *Hung* v. *Wang* (1992) 8 Cal.App.4th 908, 925-926 [11 Cal.Rptr.2d 113] (*Hung*), the court ruled that Civil Code section 1714.10, which states that a plaintiff cannot file a complaint against an attorney based upon an alleged civil conspiracy unless the court determines there is a "reasonable probability" the plaintiff will prevail, was valid against an equal protection argument. The *Hung* court reasoned that the statute's requirements were "rationally related" to the Legislature's goal of relieving a perceived increase in malpractice premiums and recusal motions resulting from claims that attorneys tortiously conspired with their clients. Our Supreme Court also rejected similar equal protection arguments in a series of cases which dealt with statutes that were enacted as part of the Medical Injury Compensation Reform Act of 1975 (Stats. 1975, Second Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007). (See *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 370-373 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233]; *Barme* v. *Wood* (1984) 37 Cal.3d 174, 181-182 [207 Cal.Rptr. 816, 689 P.2d 446]; *Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 930-933 [211 Cal.Rptr. 77, 695 P.2d 164]; *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 161-164 [211 Cal.Rptr. 368, 695 P.2d 665].) In each of these cases, the court ruled the relevant statutory provisions bore a rational relationship to the goal of easing the medical malpractice crisis and was valid under equal protection principles.

So too here. The Legislature made its intent crystal clear when adopting section 425.16. Subdivision (a) of the section states, "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through the abuse of the judicial process." The procedure mandated by section 425.16 is rationally related to the Legislature's expressed goal. The statute does not bar complaints which arise from a person's exercise of his or her rights of free speech or petition for redress of grievances, but only provides a mechanism through which such complaints can be evaluated at an early stage of the litigation process. Given the constitutional nature of these

rights, and the "disturbing increase in lawsuits" which have been brought to discourage persons from exercising them, the Legislature could reasonably conclude such suits should be evaluated in an early and expeditious manner. The statute did not violate More's right to equal protection.

### 2. The Statute, Properly Construed, Does Not Violate the Right to Trial by Jury

Next, More focuses on the language of section 425.16, subdivision (b), which states a complaint is subject to a motion to strike "unless the court determines . . . there is a probability that the plaintiff will prevail on the claim. In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." More contends that this language obligates the court to weigh the evidence which has been submitted on the motion to strike and, thus, violates its right to a jury trial.

Section 425.16 is one of several California statutes providing a procedure for exposing and dismissing certain causes of action lacking merit. Section 425.13 proscribes claims for punitive damages against health providers unless an amended pleading therefor is allowed, following a motion therefor supported by affidavits establishing a "substantial probability" that plaintiff will prevail on such claim. Section 425.14 bars punitive damages claims against religious corporations unless the court orders the filing of an amended pleading therefor on motion of plaintiff supported by affidavits "establish[ing] evidence which substantiates that plaintiff will meet the clear and convincing standard of proof" required for proof of punitive damages by Civil Code section 3294. Civil Code section 1714.10, subdivision (a) proscribes action against an attorney for civil conspiracy with his client based upon the attorney's representation of that client in attempting to contest or compromise a claim or dispute unless the court orders the filing of a pleading therefor on determining the plaintiff has "established that there is a reasonable probability that the [plaintiff] will prevail in the action." In varying language, all of these statutes literally require the trial court, at a preliminary stage of the litigation, to determine by examining affidavits the "substantial probability" of plaintiff's prevailing on a claim, whether evidence "substantiates" a standard of proof the plaintiff must meet, or whether plaintiff has "established . . . a reasonable probability" of recovery.

The principal constitutional attack mounted against statutes of this type was that a trial judge, by making these determinations, was required to weigh and adjudicate factual disputes in violation of the jury clause of the California Constitution. (Art. I, § 16.)

To save the statutes from this claimed constitutional violation, the appellate courts have construed their varying language as simply requiring the following: (1) The lower court must consider the challenged plaintiff's affidavits for the purpose of determining whether sufficient evidence has been presented to demonstrate a prima facie case. (*Hung, supra,* 8 Cal.App.4th at p. 931; *Rowe* v. *Superior Court* (1993) 15 Cal.App.4th 1711, 1723 [19 Cal.Rptr.2d 625] (*Rowe*).) (2) "In making this judgment, the trial court's consideration of the defendant's opposing affidavits does not permit a weighing of them against plaintiff's supporting evidence, but only a determination that they do not, *as a matter of law,* defeat that evidence." (*Rowe, supra,* 15 Cal.App.4th at p. 1723.)

This analysis is confirmed as applicable to the postfiling motion to strike procedure of section 425.16. (*Wilcox, supra,* 27 Cal.App.4th at pp. 823-825; *Dixon* v. *Superior Court* (1994) 30 Cal.App.4th 733, 746 [36 Cal.Rptr.2d 687]; *Robertson* v. *Rodriguez* (1995) 36 Cal.App.4th 347, 355-356 [42 Cal.Rptr.2d 464] (*Robertson*).) Section 425.16 requires the plaintiff whose cause of action is subjected to that special motion to strike simply to demonstrate by affidavit a prima facie case. Thus, properly construed section 425.16, subdivision (b) does not violate the right to a jury trial.

### 3. *The Statute, Properly Construed, Does Not Deny Due Process by Arbitrarily Curtailing or Precluding Necessary Discovery*

More's next argument touches on the concerns voiced by Stokes, *ante,* and is based on section 425.16, subdivision (g) which states, in part, "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The motion shall be noticed for hearing not more than 30 days after service unless the docket conditions of the court require a later hearing." More contends that the combined effect of the discovery stay and 30-day hearing requirement violated its due process rights because it was unable to defend adequately the motion to strike. This argument rings hollow in this case. The record indicates that by the time the court issued its judgment, this case had been pending for more than a year. Furthermore, subdivision (g) also states that the "court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." Not only did More never try to take advantage of this exception, it never sought *any* discovery in this case. Having never sought discovery or the benefit of the statutorily mandated exception, we cannot see how More's due process rights were violated. (Cf. *Robertson, supra,* 36 Cal.App.4th at p. 357.)

We acknowledge, however, that the discovery stay and 30-day hearing requirement of section 425.16 literally applied in all cases might well

adversely implicate a plaintiff's due process rights, particularly in a libel suit against a media defendant. The court in *Looney v. Superior Court* (1993) 16 Cal.App.4th 521, 537 [20 Cal.Rptr.2d 182] indicated that "an ample opportunity to conduct discovery," by a health care provider sued for punitive damages, was a substantial factor in balancing that defendant's right to nine month's notice of such claim prior to the trial date (§ 425.13) against the plaintiff's right of trial preference (§ 36, subds. (d) & (e)). That opportunity *if sought* is of prime import in a libel suit against a media defendant who will generally be the principal, if not the only, source of evidence concerning such matters as whether that defendant knew the statement published was false, or published the statement in reckless disregard of whether the matter was false and defamatory, or acted negligently in failing to learn whether the matter published was false and defamatory. Motions under section 425.16 commonly will be filed early in the legal proceedings, before the plaintiff has the opportunity to conduct (or complete) significant and necessary discovery. If the plaintiff makes a timely and proper showing in response to the motion to strike, that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case, the plaintiff must be given the reasonable opportunity to obtain that evidence through discovery before the motion to strike is adjudicated. The trial court, therefore, must liberally exercise its discretion by authorizing reasonable and specified discovery timely petitioned for by a plaintiff in a case such as this, when evidence to establish a prima facie case is reasonably shown to be held, or known, by defendant or its agents and employees. Furthermore, while the statute says the motion to strike "shall be noticed for hearing not more than 30 days after service" (§ 425.16, subd. (g)), nothing therein prevents *the court* from continuing the hearing to a later date so that the discovery it authorized can be completed where a reasonable exercise of judicial discretion dictates the necessity therefor. So construed, the statute does not violate a plaintiff's right to due process of law in a libel action against a media defendant.

### C. *Whether More Met Its Burden Under Section 425.16*

■ The final issue is whether the trial court properly dismissed the suit under section 425.16. More argues the evidence before the court on the motion established a "probability" that it would prevail, and that the trial court erred when it granted the motion to strike. We disagree.

At the outset, More's briefs on this issue are seriously defective. Although More contends the evidence submitted to the trial court was sufficient to meet the requirements of section 425.16, it does not clearly describe what evidence was sufficient to meet those requirements, or how that evidence

made out a prima facie case of libel. Indeed, More's briefs do not even include a statement of facts, as required by rule 13 of the California Rules of Court. Instead, More has attached a 16-page exhibit to its opening brief which lists some of the allegedly defamatory statements contained in the Chronicle articles and then provides excerpts from the declarations which it submitted on the motion for reconsideration which dispute the statements' accuracy. Not only does this technique not comply with the rules of court, the document is not linked to the individual arguments in the brief and provides no clue as to how the individual statements can be deemed libelous under the applicable law. Thus, we are left to "guess" how More believes the trial court erred. It is axiomatic that a trial court's ruling is presumed to be correct. (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58].) An appellant "must convince the court, by stating the law and calling relevant portions of the record to the court's attention, that the trial court decision contained reversible error." (Cal. Civil Appellate Practice (Cont.Ed.Bar 1985) Evaluating Grounds for Reversal, § 4.10, p. 69; see also *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 [187 Cal.Rptr. 200]; *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 712 [152 Cal.Rptr. 65].) Since More has not clearly demonstrated that the trial court erred, we reject the claim for this reason alone.

Furthermore, More's arguments are unconvincing in any event. For example, More argues it was libeled when an article stated that it offered a "unique course in carnal knowledge." However, truth is a defense to a libel suit (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 494, p. 583; see also *Aisenson* v. *American Broadcasting Co.* (1990) 220 Cal.App.3d 146, 154 [269 Cal.Rptr. 379]), and the article's statement was undeniably true. More's general catalogue shows it offers courses in "Advanced Sensuality" and "Mutual Pleasurable Stimulation of the Human Nervous System." Even a cursory glance at the content of these courses shows the essential accuracy of the Chronicle's characterization.[6]

More also argues it was libeled when the Chronicle described it as a "sensuality school." However, it is undisputed that More offers an advanced

---

[6]More's course description for the "Advanced Sensuality" class explains that "Students work with partners" and do "research and experimentation" in the areas of "engorgement, lubrication, seminal secretion." The outline for the class in "Mutual Pleasurable Stimulation of the Human Nervous System" (which is limited to married couples and consenting adults) states that students will examine "partner exchange, emotional involvement related to sexing and oral-genital relationships." The outline further explains that the successful student will be required to "come undeniably every day," and that one of the goals of the course is to "make friends with another crotch." The outline also cautions students to bring "small hand towels, and lubricant, plus latex gloves" to class. To obtain a doctorate in sensuality, a male student "must demonstrate how to take control of a woman's level of tumescence in a laboratory setting under the direct supervision of the faculty of the Sensuality Department." A female

degree in "sensuality" and that many of its courses have an explicitly sexual theme. Since the substance and gist of the characterization is true, any minor inaccuracy cannot be deemed libelous. (*Heuer* v. *Kee* (1936) 15 Cal.App.2d 710, 714 [59 P.2d 1063].)

More contends that its founder, Victor Baranco, was libeled when the Chronicle described him as a "reclusive guru." However, a statement cannot be deemed libelous unless it conveys to the recipient a provably false assertion of fact. (*San Francisco Bay Guardian, Inc.* v. *Superior Court* (1993) 17 Cal.App.4th 655, 659 [21 Cal.Rptr.2d 464].) The term, as used in the articles in question, was not capable of being proven true or false.

More also contends it was libeled because the Chronicle reported that a former student, Alan Steele, had alleged the school was engaged in questionable and illegal activity. However, More itself sued Steele for libel because of his allegations, and the Chronicle simply reported the same facts contained in the libel suit. A "fair and true" report of a judicial proceeding is absolutely privileged. (Civ. Code, § 47, subd. (d).) More's briefs on appeal do not even attempt to explain why this privilege is inapplicable.

We conclude More has not met its appellate burden of showing error. The trial court properly granted the motion under section 425.16.

III. Disposition

The judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied September 1, 1995, and appellants' petition for review by the Supreme Court was denied November 30, 1995.

---

student "must demonstrate, for one hour, her ability to respond to the direct control of her level of tumescence at the hands of a certified partner in the laboratory setting."