STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-10-143

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 04 2010

RECEIVED

IGOR MALENKO,

        Plaintiff,

    v.                                            ORDER


MARY POLLY CAMPBELL

        Defendant


Defendant Mary Polly Campbell's Rule 12(b)(6) motion to dismiss and her

special motion to dismiss pursuant to 14 M.R.S. § 556 (2009) are before the court.

## BACKGROUND

This case grows out of plaintiff Igor Malenko's acrimonious divorce from

his former wife, Lori Handrahan. The divorce proceedings were held between

late 2008 and early 2009, during which time Ms. Handrahan accused Mr.

Malenko of being mentally ill and physically abusive. (Pl.'s Compl. ¶¶ 7, 9, 11,

13.) The trial judge ultimately found that Mr. Malenko was neither ill nor

abusive, and did not pose a danger to Ms. Handrahan or to their infant daughter,

Mila Malenko.[1] (Pl.'s Compl. ¶¶ 14, 16–18.) The judge did, however, find that Ms.

Handrahan suffered from a personality disorder that could affect her ability to

effectively co-parent with Mr. Malenko. (Pl.'s Compl. ¶¶ 20–21.) The judge

awarded Ms. Handrahan primary custody of Mila, but granted Mr. Malenko

---

[1] Mila Malenko was born November 29, 2006, and was two years old at the time
of the divorce. (Pl.'s Compl. ¶ 14.)

1

shared rights and responsibilities with significant visitation rights. (Pl.'s Compl. ¶ 19.)

During an early phase of the divorce proceeding in December 2008, Ms. Handrahan contacted defendant Mary Campbell for support. (Pl.'s Compl. ¶ 6.) Ms. Campbell is a registered nurse and was the director of the Sexual Assault Forensic Examiners Agency (SAFE), which is part of the criminal division of the Attorney General's Office. (Pl.'s Compl. ¶¶ 3–5.) Ms. Campbell and Ms. Handrahan became friends and were in frequent contact through the summer of 2009. (Pl.'s Compl. ¶¶ 8–12.) Ms. Campbell was not involved in her professional capacity at any time. (Pl.'s Compl. ¶¶ 13–14.) On July 10, 2009, Ms. Handrahan brought her daughter Mila to the Freeport Medical Center. (Pl.'s Compl. ¶ 48.) On July 11, 2009, Ms. Campbell reported Mr. Malenko to the Department of Health and Human Services for the suspected sexual abuse of Mila, and told the intake worker that she suspected Mr. Malenko had child pornography on his computer. (Pl.'s Compl. ¶¶ 25, 28.) She added the caveat that she did not have any evidence regarding the child pornography charge, but was basing the allegation on her "sixth sense." (Pl.'s Compl. ¶ 29.)

The record does not disclose the results of DHHS's investigation, but it appears that the allegations of sexual abuse were not substantiated. On April 1, 2010, Mr. Malenko filed a complaint against Ms. Campbell accusing her of intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation. The plaintiff alleges that Ms. Campbell knew that Mr. Malenko had not sexually abused his daughter, but nonetheless manufactured the allegations and coached Mila in order to further Ms. Handrahan's campaign to sabotage Mr. Malenko's relationship with his child. (Pl.'s Compl. ¶¶ 22–25,

2

38–39, 43–45, 48–51.) Ms. Campbell denies these accusations and contends that her statements were privileged, that Mr. Malenko has failed to adequately plead a case, and that his complaint should be dismissed pursuant to Maine's Anti-SLAPP statute.

## DISCUSSION

Motions for dismissal are generally decided solely on the pleadings, and are converted into motions for summary judgment if the court considers extraneous material. M.R. Civ. P. 12(b); *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 8–9, 843 A.2d 43, 47–48. In contrast, special section 556 motions require the court to examine both the pleadings and supporting affidavits. *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 20, 772 A.2d 842, 849. As treatment of the special motions requires the court to consider material outside the pleadings, the court considers Ms. Campbell's Rule 12(b)(6) motion first.

### 1.   Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss tests the legal sufficiency of the complaint." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). The Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *McAfee*, 637 A.2d at 465). "For purposes of a 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *McAfee*, 637 A.2d at 465. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245–46.

Ms. Campbell first argues that the immunity provision of 22 M.R.S. § 4014 should subject Mr. Malenko's complaint to a heightened pleading standard and that it should be found deficient. Maine provides statutory immunity from civil or criminal liability arising out of a good-faith report of child abuse. 22 M.R.S. § 4014(1) (2009). The law establishes a rebuttable presumption of good faith, but explicitly exempts knowingly false reports from the statute's protection. 22 M.R.S. § 4014(1), (2). The defendant contends that this provision is a statutory codification of the common law privilege granted to defamatory statements "in settings where society has an interest in promoting free, but not absolutely unfettered, speech." *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). Like the immunity granted by section 4014, such a common law privilege is not afforded to knowing misrepresentations. *Id.*; Restatement (Second) of Torts § 600 (1977). Drawing on the policy favoring the prevention and prompt reporting of child abuse evinced by section 4014, Ms. Campbell argues that the statutory presumption of good faith requires Mr. Malenko to plead facts that would demonstrate bad faith with specificity.

"Maine is a notice pleading state, and only 'requires a short and plain statement of the claim to provide fair notice of the cause of action.'" *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, ___ A.2d ___ (quoting *Town of Stonington v. Galilean Gospel Temple*, 1999 ME 2, ¶ 14, 722 A.2d 1269, 1272) (internal quotations omitted). Rule 9(b) requires that "circumstances constituting fraud or mistake . . . be stated with particularity," but allows conditions of mind such as knowledge or bad faith to be averred generally. M.R. Civ. P. 9(b). Ms. Campbell's argument would alter Rule 9(b)'s instruction that mental states may be averred generally in cases arising from a report of child abuse. Courts in

4

Pennsylvania, which has a statute almost identical to 22 M.R.S. § 4014, have taken the step of requiring plaintiffs in these circumstances to plead facts that would objectively manifest bad faith if proven. *Heinrich v. Conemaugh Valley Mem'l Hosp.*, 648 A.2d 53, 58 (Pa. Super. 1994) (citing *Roman v. Appleby*, 558 F. Supp. 449 (E.D. Pa. 1983)).[2]

While courts are generally prohibited from altering the pleading requirements absent a rule or statutory authority, the Law Court has stated that "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." *Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676, 680 (quoting *Bell Atlantic Corp. v. Twombly*, 550 US 544, 569 n.14 (2007)) (quotations omitted). In *Bean*, the Law Court found that civil perjury claims brought under 14 M.R.S. § 870 hold the potential for such abuse. *Id.* Characterizing perjury as a species of fraud, the Court held that heightened pleading requirements were necessary to prevent disgruntled litigants from using section 870 as a vehicle to relitigate their earlier claims. *Id.* at ¶¶ 12, 13, 939 A.2d at 680.

A purely statutory justification for tightening the pleading standard in this case is illusory. While 22 M.R.S. § 4014 does provide a presumption of good faith to one who reports child abuse, it does not appear to substantially alter the standard of proof. A plaintiff would bear the burden of proving that the reporter acted in bad faith, i.e. knowingly, even without the statutory presumption. However, the statute does clearly indicate a strong policy of encouraging the early reporting of child abuse and relieving reporters from the burden of independently verifying their suspicions before contacting the authorities. There

---

[2] The defendant cites to other cases that involved motions for summary judgment and are thus not applicable to the pleading standard.

is also a high risk that an accused will seek to retaliate against a reporter in those cases where abuse is never proven. Finally, an accusation of bad-faith reporting is akin to an accusation of fraud in that both seek to hold a party liable for a deception employed to harm the accuser. Following *Benn*, there is a strong argument that allegations arising from a report of abuse should be subjected to a heightened standard of pleading.

However, the court does not need to adopt such a rule in this case, as Mr. Malenko's complaint may be fully disposed of on the motions' merits. Furthermore, the plaintiff has met the heightened burden that Ms. Campbell would have the court impose. Mr. Malenko alleges that Ms. Campbell had no reasonable basis to believe he posed a threat because she had never met him and knew that the divorce court had found him non-abusive. (Pl.'s Compl. ¶¶ 16–18, 30–33.) She nonetheless conspired with the plaintiff's ex-wife to circumvent the court's award of shared parental rights and prevent Mr. Malenko from contacting his daughter. (Pl.'s Compl. ¶¶ 20, 22–23.) To this end, Ms. Campbell knowingly made a false report of abuse to DHHS and coached Mila Malenko to make false statements indicating that sexual abuse had occurred. (Pl.'s Compl. 24–25, 38–39, 48–50.) If proven, the act of coaching the child and her mother to make false statements would alone provide objective evidence of bad faith. Taking all of the allegations together, the plaintiff has more than met his pleading burden. The court does not dismiss his claim on the basis of 22 M.R.S. § 4014.

Plaintiff's Count I alleges intentional infliction of emotional distress. To prevail, Mr. Malenko must prove:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such

distress would result from her conduct; (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22–23 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847).

The plaintiff has alleged intent, causation, and severe distress. Assuming he will be able to prove these elements, the alleged conduct still must have been outrageous as a matter of law in order for him to recover. *See Colford v. Chubb Life Co. of Am.*, 687 A.2d 609, 616 (Me. 1996) (court must determine whether conduct could reasonably be deemed sufficiently extreme and outrageous to incur liability). The question is whether filing a false report of child abuse with DHHS would be so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d at 22–23.

The Law Court has ruled that filing a police report, even if done without adequate justification, does not necessarily "exceed all possible bounds of decency." *Holland v. Sebunya*, 2000 ME 160, ¶ 17, 759 A.2d 205, 212. However, in that case the police had been called to remove an individual from a committee meeting. *Id.* ¶ 2, 759 A.2d at 207. Here the defendant is accused of manufacturing a charge of sexual abuse to destroy a father's relationship with his daughter. If true, an attempt to sabotage a parental bond through false accusations of heinous behavior is substantially more outrageous than having the police eject someone from a meeting. Mr. Malenko's claim for intentional infliction of emotional distress survives the defendant's motion to dismiss.

7

Unlike Count I, the plaintiff's Count II for negligent infliction of emotional distress is insufficient on the pleadings. A separate action for negligent infliction of emotional distress only exists in cases of bystander liability or cases where the plaintiff and defendant shared a special relationship. *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d at 25–26. Mr. Malenko has not alleged either circumstance, and Count II is dismissed.

Count III alleges defamation resulting from Ms. Campbell's allegedly false accusations. Defamation consists of:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (adopting Restatement (Second) of Torts § 558 (1977)). The term "publication" is a term of art that refers to any intentional or negligent communication to a third party. *Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189, 1197.

Mr. Malenko alleges that Ms. Campbell knowingly made a false statement to DHHS accusing him of criminal conduct and gross sexual impropriety. These accusations constitute slander per se and are actionable irrespective of any special harm. Restatement (Second) of Torts §§ 571, 574 (1977). As discussed above, the defendant's alleged bad faith would defeat any privilege if proven. Mr. Malenko has made his prima facie case and Count III is not dismissed pursuant to Rule 12(b)(6).

## 2. 14 M.R.S. § 556 Special Motion to Dismiss

Maine's anti-SLAPP legislation was created to provide certain targeted defendants with expedited relief from punitive litigation. A SLAPP suit, or

8

Strategic Lawsuit Against Public Participation, "is litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842, 846 (quoting *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 44 Cal. Rptr. 2d 46, 48 (Cal. Ct. App. 1995)). SLAPP plaintiffs do not intend to win their suits, but rather to punish activists and whistleblowers by imposing delay, distraction, and litigation expense. *Id.* While classic SLAPP litigation is "directed at individual citizens of modest means for speaking publicly against development projects," Maine's anti-SLAPP legislation protects a much broader range of activity. *Id.* (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 161, 691 N.E.2d 935, 940 (Mass. 1998)). The statute defines the protected "right to petition" to include:

> [A]ny written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body . . . ; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556 (2009); *see Schelling v. Lindell*, 2008 ME 59, ¶ 11, 942 A.2d 1226, 1230.

The statute operates by allowing defendants to file a "special motion to dismiss" that the court will hear "with as little delay as possible." 14 M.R.S. § 556 (2009); *Schelling*, 2008 ME 59, ¶ 6, 942 A.2d at 1229. The defendant bears the initial burden of "showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft*, 427 Mass.

at 167–68, 691 N.E.2d at 943.[3] "Once the defendant demonstrates . . . that the statue applies, "the burden falls on the plaintiff to demonstrate that the defendant's activity (1) was without 'reasonable factual support,' (2) was without an 'arguable basis in law,' and (3) resulted in 'actual injury' to the plaintiff." *Schelling*, 2008 ME 59, ¶ 7, 942 A.2d at 1229. After this shift, the court views the evidence in the light most favorable to the moving defendant because the non-moving plaintiff bears the burden of proof. *Morse Bros., Inc.*, 2001 ME 70, ¶ 18, 772 A.2d at 849.

All of Mr. Malenko's Counts arise from Ms. Campbell's report to DHHS accusing him of sexually abusing Mila Malenko and possibly keeping child pornography on his computer. The plaintiff specifically alleges that Ms. Campbell acted in her personal capacity, rather than pursuant to any mandatory reporting requirements imposed by her professional position. Past courts have found that reporting incidents of crime or abuse to the police constitutes a protected exercise of the reporter's right to petition. *See Benoit v. Frederickson*, 454 Mass. 148, 908 N.E.2d 714 (Mass. 2009) (reporting rape to police is protected petitioning activity); *McLarnon v. Jokisch*, 431 Mass. 343, 344–45, 348–49, 727 N.E.2d 813, 815, 818 (Mass. 2000) (mother's call to police to report perceived violation of a restraining order and subsequent efforts to extend order were petitioning activity protected by anti-SLAPP legislation). The defendant's report to DHHS is a similarly protected "written or oral statement . . . submitted to a . . . executive body" within the meaning of the anti-SLAPP statute. 14 M.R.S. § 556.

---

[3] Massachusetts's anti-SLAPP legislation is "nearly identical to 14 M.R.S. § 556" and the Supreme Judicial Court of Maine has freely looked to Massachusetts precedent for guidance in its interpretation. *See Moores Bros., Inc.*, 2001 ME 70, ¶ 15, 772 A.2d at 848 (citing and explaining *Donovan v. Gardner*, 50 Mass. App. Ct. 595, 740 N.E.2d 639, 642 (Mass. App. Ct. 2000)).

Since the statute applies, the burden shifts to Mr. Malenko to show that Ms. Campbell's report "1) was without 'reasonable factual support,' (2) was without an 'arguable basis in law,' and (3) resulted in 'actual injury' to the plaintiff." *Schelling*, 2008 ME 59, ¶ 7, 942 A.2d at 1229. To this end, the plaintiff has submitted an affidavit that essentially recites his complaint in the first person. This affidavit falls short of the statutory burden, despite Ms. Campbell's failure to provide any opposing affidavits. Mr. Malenko testifies that the defendant knowingly and maliciously fabricated the accusations against him, but he does not indicate how he is competent to speak to her state of mind. Neither does he reveal why or how he has come to believe that Ms. Campbell coached Ms. Handrahan and Mila Malenko to make false statements. In sum, Mr. Malenko's affidavit consists mostly of speculation and conjecture. He has not offered any competent evidence to show that Ms. Campbell had *no* basis in fact or law for reporting him to DHHS.

Mr. Malenko's affidavit also fails to show that Ms. Campbell's actions caused him "actual injury." The term "actual injury" means "damages in a definite amount [that] may be determined with reasonable certainly." *Schelling*, 2008 ME 59, ¶ 17, 942 A.2d at 1231 (quoting *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶¶ 9–10, 847 A.2d 1169, 1173–74). To successfully oppose a special motion to dismiss, a plaintiff "must show a reasonably certain monetary valuation of the injury []he has suffered." *Id.* (citing *Maietta Constr., Inc.*, 2004 ME 53, ¶¶ 9–10, 847 A.2d at 1173–74). Common law libel is insufficient to meet the statutory requirement. *Id.* ¶ 18, 942 A.2d at 1232.

Mr. Malenko has not made any move to place a monetary value on his damages. Absent money damages, he can "only meet the actual injury

11

requirement by *showing* the kinds of damages required in this state to recover for purely emotional harms." *Schelling*, 2008 ME 59, ¶ 27, 942 A.2d at 1233 (emphasis added). While Maine does not require any objective symptomatology to recover for emotional distress and instead looks to the objective "circumstances of the event," it is not clear that the plaintiff's mere recitation that he suffered extreme emotional distress is sufficient to survive the defendant's special motion. *See id.* ¶¶ 24–26, 942 A.2d at 1233. Looking solely at the objective circumstances alleged, the court cannot say that a normally constituted reasonable person would not "be unable to adequately cope with the mental stress engendered" by a false allegation that the person had sexually molested his child. *See id.* ¶ 24, 942 A.d at 1233 (quoting *Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433, 433 (Me. 1982)).

**The entry is:**

Mr. Malenko has presented no evidence other than his private belief that the defendant acted as part of a conspiracy with his ex-wife. Drawing all inferences in the defendant's favor, the court grants the defendant's special motion because Mr. Malenko has not shown that Ms. Campbell had no reasonable basis in fact or law to report him to DHHS. Mr. Malenko's complaint is dismissed.

DATE: _August 4 2010_

Roland A. Cole
Justice, Superior Court

12

-------------------------------------------------------------------------

01 0000000353          SAUCIER, MICHAEL E
      THREE CANAL PLAZA PO BOX 4630 PORTLAND ME 04112-4630
      F      MARY POLLY CAMPBELL                DEF      RTND    04/20/2010

02 0000007389          WAXMAN, MICHAEL
      30 CITY CENTER PO BOX 375 PORTLAND ME 04112-0375
      F      IGOR MALENKO                       PL       RTND    04/01/2010