2004 ME 53

**MAIETTA CONSTRUCTION, INC., et al.**

v.

**Theodore WAINWRIGHT.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 12, 2003.
Decided: April 15, 2004.

---

David Kreisler, Daniel G. Lilley Law Office, Portland, for the appellants.

Paul S. Douglass, Lewiston, for the appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Maietta Construction, Inc., Louis Maietta Sr., Robert L. Maietta, Michael L. Maietta, Louis B. Maietta Jr., Vincent A. Maietta, Thomas S. Maietta, James D. Maietta, Robert D. Maietta, and Neil L. Maietta (Maietta) appeal from a judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) in favor of Theodore Wainwright dismissing all five counts of Maietta's complaint alleging defamation, intentional infliction of emotional distress, false light, interference with an advantageous relationship, and requesting punitive damages. Maietta argues that the Superior Court erred in finding that (1) the Anti–SLAPP statute, 14 M.R.S.A. § 556 (2003), applies to its claims; (2) there is a basis in fact for Wainwright's statements; and (3) Maietta was not injured in fact by Wainwright's statements. Wainwright cross-appeals, arguing that the court exceeded the bounds of its discretion in refusing to award him attorney fees. We disagree with both Maietta and Wainwright and affirm the judgment.

## I.  BACKGROUND

[¶ 2] This case stems from a grievance concerning a parcel of land, which Wain-

wright conveyed to the City of South Portland in January 1999. Wainwright had owned a 400–acre potato and turf farm partially located in South Portland. "Wainwright sold 150 acres of the property to the City subject to the condition ... that soil or loam could not be removed from the property." Maietta was awarded a contract to develop the property into a recreational complex for the City. The contract contained terms prohibiting Maietta from removing any topsoil or loam from the property.

[¶ 3] Upon visiting the property, Wainwright became convinced that Maietta was removing loam, in violation of Maietta's contract with the City, as well as the condition of sale. Wainwright brought his concerns to the City Council, and eventually retained an attorney in the hope of encouraging the City to take action against Maietta's alleged removal of the loam from the site. Unhappy with the City's response to his concerns, Wainwright extended his campaign, allowing his attorney to contact local news reporters. This resulted in a series of newspaper articles and television reports about the dispute.

[¶ 4] Maietta filed suit against both Wainwright and his attorney, David Lourie, alleging that they had been defamed by Wainwright's public campaign accusing Maietta of stealing loam.[1] Wainwright and Lourie filed special motions to dismiss pursuant to section 14 M.R.S.A. § 556,[2] accompanied with supporting affidavits and exhibits. In their motions they asserted that any statements they made to City officials or the press were solely part of an effort to compel the City to enforce restrictions placed in the deed, as well as the terms of the contract between the City and Maietta.

[¶ 5] The Superior Court found that Wainwright and Lourie had satisfied their burden of asserting that the suit was based on Wainwright exercising his constitutional right of petition. Consequently, the burden shifted to Maietta to show that the Defendants' petitioning activity lacked "any arguable basis in law," or lacked any "reasonable factual support." *Morse Bros. v. Webster*, 2001 ME 70, ¶ 20, 772 A.2d 842, 849 (quoting 14 M.R.S.A. § 556). The Superior Court held that Maietta had been unsuccessful in showing that Wainwright's petitioning lacked an arguable basis in fact or law. The Superior Court awarded attorney fees to Lourie, determining that "the Plaintiffs were attempting to intimidate or silence an attorney who was representing a client with potentially legitimate concerns involving property sold with conditions to the City of South Portland." Conversely, the Superior Court held that there was some merit to Maietta's claims against Wainwright, and therefore the

---

1. Maietta concedes that it removed loam from the property, however, it asserts that it did so only to prevent children from playing on mounds of it at the construction site.

2. The statute provides, in part:

When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The court shall advance the special motion so that it may be heard and determined with as little delay as possible. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S.A. § 556 (2003).

court refused to award attorney fees to Wainwright.

## II.  DISCUSSION

■ [¶ 6] Section 556 was designed to combat "litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." *Morse Bros.*, 2001 ME 70, ¶ 10, 772 A.2d at 846 (quoting *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal.App.4th 855, 44 Cal.Rptr.2d 46, 48 (1995)).  Section 556 targets plaintiffs who "do not intend to win their suits; rather they are filed solely for delay and distraction, and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances." *Morse Bros.*, 2001 ME 70, ¶ 10, 772 A.2d at 846 (quoting *Dixon v. Superior Court*, 30 Cal.App.4th 733, 36 Cal.Rptr.2d 687, 693 (1994)).  Maietta's suit was based on the petitioning activity of Wainwright.

### A.  Special Motion to Dismiss

■ [¶ 7] Maietta's complaint cites letters written by Wainwright or Lourie, addressed to the City Council and the Mayor, as well as statements made to the newspapers.  These communications clearly amount to petitioning activity.  Moreover, contrary to Maietta's contention, this is the sort of petitioning activity envisioned by the statute.  In *Morse,* we held that the "typical mischief that [section 556] intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Morse Bros.*, 2001 ME 70, ¶ 10, 772 A.2d at 846 (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 691 N.E.2d 935, 940 (1998)).  Therefore, the trial court did not err in holding that section 556 applied to the facts of this case.

■ [¶ 8] In *Morse Bros.*, we articulated the standard of review:

We "review the judge's decision regarding such a special motion to dismiss to determine whether there was an abuse of discretion or error of law. [ ] When reviewing the motion, the Court should view the evidence in the light most favorable to the moving party because the responding party bears the burden of proof when the statute applies."

*Morse Bros.*, 2001 ME 70, ¶ 18, 772 A.2d at 849 (citations omitted).  The Superior Court was required to dismiss Maietta's complaint unless Maietta could show that there was no reasonable factual basis for Wainwright's petitioning.  14 M.R.S.A. § 556.  Wainwright's motion for dismissal included affidavits stating that he had personally witnessed Maietta's employees removing soil from the property.  The affidavit also averred that Wainwright had presented the issue to the City Council, but had not received a satisfactory explanation.  Wainwright also included in his motion photos that purport to show Maietta employees removing loam.  Because this evidence is viewed most favorably to the moving party, it cannot be said that the trial court exceeded the bounds of its discretion by holding that there was enough evidence to conclude that there was "arguably a legitimate basis for Defendant Wainwright to bring his concerns to the attention of the City of South Portland and to the press."

### B.  Section 556 Requires Proof of Actual Damages

[¶ 9] Maietta asserts that the trial court erred in concluding that it did not suffer an actual injury based on Wainwright's petitioning activity.  Maietta points out that certain categories of defamation are deemed sufficiently serious that damages are presumed. Hence, Maietta contends that because the allegations, if established, constitute defamation per se, they also constitute actual damages.  Maietta misinterprets the actual injury requirement.

[¶ 10] Maietta is incorrect in suggesting that damages per se are equivalent to actual damages. "Recovery for slander *per se* requires no showing of special harm beyond the publication itself." *Rippett v. Bemis,* 672 A.2d 82, 86 (Me.1996). "When recovery may be had *only for actual damage sustained* [however] the record must contain evidence from which damage in a definite amount may be determined with reasonable certainty." *Dairy Farm Leasing Co. v. Hartley,* 395 A.2d 1135, 1140 (Me.1978) (quoting *McDougal v. Hunt,* 146 Me. 10, 14, 76 A.2d 857, 860 (1950)). Such a determination "must not be left to mere guess or conjecture." *Id.* at 1141. Generally, Legislatures are deemed to draft legislation against the backdrop of the common law, and do not displace it without directly addressing the issue. *See Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003). Therefore, the Legislature imposed the requirements of section 556 understanding that they would require plaintiffs to produce affirmative evidence of an injury.

## C. Attorney Fees

[¶ 11] The trial court granted attorney fees to Lourie but not to Wainwright. Wainwright cross-appeals for attorney fees.[3] "We review the Superior Court's determination of attorney fees for an abuse of discretion." *Lee v. Scotia Prince Cruises Ltd.,* 2003 ME 78, ¶ 18, 828 A.2d 210, 215 (citations omitted). The trial court distinguished between Wainwright and Lourie based upon the premise that the lawsuit against Wainwright has more merit than the suit against his attorney, and therefore better conforms to the policy behind the statute. Wainwright contends, as does the dissent, that the distinction between·Wainwright and his attorney does not further the statute's policy, and is not supported by the record. We disagree.

[¶ 12] We note at the outset that the trial court's use of the merit of the respective cases, as a measure of whether attorney fees are appropriate, is logical because the anti-SLAPP statute is aimed at preventing litigation that has no chance of succeeding on the merits. *Morse Bros.,* 2001 ME 70, ¶ 10, 772 A.2d at 846 ("SLAPP litigation, generally, is litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants.") (citation omitted).

[¶ 13] The record supports the trial court's findings with respect to the merit of the suit against Wainwright. The merit of a case is simply its likelihood of success. The determination of merit requires the trial court to weigh the evidence and assess its probative value. The trial court did not exceed the bounds of its discretion in its determination that the case against Wainwright is stronger than the case against Lourie.[4] The gravamen of Maietta's complaint is that Maietta, Inc. has been publicly (and falsely) accused of steal-

---

**3.** The statute provides:
    If the court grants a special motion to dismiss, the court *may* award the moving party costs and reasonable attorney's fees.
    14 M.R.S.A. § 556 (emphasis added).

**4.** The dissent notes that Wainwright and Lourie are in "almost identical positions." While joined in a single complaint, however, there were two separate suits before the court. Very little of the evidence has equal probative value against both Wainwright and his attorney. Rather, most of it is applicable against one or the other. For instance, Wain-

wright's public declaration that Maietta, Inc. was involved in the theft of valuable loam would have some probative value in a defamation suit against Wainwright, but would be virtually irrelevant in a defamation suit against Lourie. This is not, as the dissent suggests, a distinction without a difference. The distinction lies not in the allegations but in the evidence. Also, due to agency principles, some evidence that may have probative value against Wainwright will have no probative value with respect to Lourie, while evi-

ing, a serious criminal allegation which could irreparably injure its professional reputation.

[¶ 14] While there is direct evidence that Wainwright publicly accused Maietta of stealing loam, it is not clear that Lourie made such an assertion. In a sworn affidavit, Maietta refers to a meeting in August of 2002, during which "Mr. Wainwright accused Maietta Construction of stealing loam [but] provided neither a basis for his accusations nor information evidencing such a claim." The chronology of events submitted by Jeffrey K. Jordan, South Portland city manager, makes reference to instances in which Wainwright directly (not through his attorney) alleged that Maietta was *stealing* loam. The record reveals Lourie calling for an investigation, criticizing the City for dragging its heels with respect to an inquiry, and even questioning whether Maietta had removed loam in contravention of the terms of the land grant. While these are serious accusations, they are less likely to support a defamation claim. It was not, therefore, an abuse of discretion for the trial court to conclude that there is less merit to the claim against Lourie, and therefore the suit against him more closely resembles a classic SLAPP suit.

[¶ 15] It should be noted, however, that the varying merit assigned to the cases by the trial court is of little relevance, from the standpoint of our dissenting colleagues. They believe that we should interpret the statute to command the award of attorney fees in all cases, "unless special circumstances would render such an award unjust."

[¶ 16] The dissent begins with an unremarkable premise: the "Legislature knew that in exercising its discretion a court would apply relevant case law and analogize to similar statutes." From this undisputable starting point, the dissent concludes that we should borrow an interpretation of a federal statute, 42 U.S.C. § 1988, requiring that attorney fees be awarded unless special circumstances exist.

[¶ 17] The plain language of section 556 needs little help from our case law for interpretation. Further, to the extent that the statute must be interpreted, the proposed nexus between Maine's anti-SLAPP legislation and § 1988 (designed to protect a citizen's civil rights against state actors) is tenuous, and imposes an interpretation of a federal statute that is incongruous with this Court's interpretation of Maine statutes.[5]

---

dence against Lourie may very well be applied against Wainwright.

**5.** In analogizing section 556 to § 1988, the dissent cites two Maine cases, and states that "[f]ollowing federal authority, we have construed ... § 1988 as meaning that a prevailing party ordinarily recovers attorney fees 'unless special circumstances would render such an award unjust.'" We implemented the "special circumstances" standard, however, because we were constrained to follow federal case law while interpreting a federal statute. Hence, we imposed the special circumstances test in spite of our interpretation of the statutory language, not because of it:

   The text of § 1988 purports to give discretion to the trial court judge in awarding

attorney fees. However, this discretion has been substantially restricted by federal courts, necessitating the judicially created "special circumstance exception," which holds that a "prevailing party *should* ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (emphasis added) (internal quotations omitted). Accordingly, although judicial discretion is not explicitly restricted by federal statute, we are constrained by the substantial federal jurisprudence on this point.

*Bangs v. Town of Wells,* 2003 ME 129, ¶ 17, 834 A.2d 955, 960.

[¶ 18] Generally, courts rely on case law when a statute is ambiguous, or silent on an issue. In this case, however, the statute is clear—attorney fees are not awarded as a matter of course, but may be granted at the discretion of the trial court. The Legislature is familiar with the difference between the term "may" and alternatives such as "shall" or "will." There is no reason to believe that the Legislature would have so clumsily implied a "special circumstances" standard for denying attorney fees, when in the past they have articulated it expressly. *See e.g.* 30–A M.R.S.A. § 4452(3)(D) (1996) ("If the municipality is the prevailing party, the municipality must be awarded reasonable attorney fees, expert witness fees and costs, *unless the court finds special circumstances* make the award of these fees and costs unjust.") (emphasis added). The existence of this concept, written plainly into statutory language, demonstrates the Legislature's ability to create a presumption of attorney fees without the assistance of this Court.

[¶ 19] The dissent notes that laws are drafted against the backdrop of case law. The federal court's interpretation of § 1988, however, does not accurately reflect our general posture towards attempts to infer attorney fees from Maine statutes. We have held:

> It is well settled that Maine courts have no authority to award such fees in the absence of express statutory authorization or agreement by the parties. Because of the unique nature of attorneys' fees, a statutory right to recover attorneys' fees will be found only in the clearest kind of legislative language. Accordingly, a cause of action for attorneys' fees cannot be implied from legislative intent and must be articulated in unmistakable terms.

*Goodwin v. Sch. Admin. Dist. No. 35,* 1998 ME 263, ¶ 13, 721 A.2d 642, 646 (citation

and quotation omitted); *see also Vance v. Speakman,* 409 A.2d 1307, 1312 (Me.1979) ("Against the background of the firmly established common law rule denying the award of attorneys' fees and Maine's failure in this regard to follow the model of federal antidiscrimination laws, this court is unwilling to infer that the legislature meant such an award . . . .").

■■■■ [¶ 20] These cases are not directly on point, as they interpret statutes that make no mention of attorney fees. They are emblematic, however, of the state of the common law in Maine, and our disinclination to infer attorney fees from statutory language. Just as we will not infer attorney fees in the absence of an express statutory grant, neither will we infer a presumption of attorney fees in the face of a permissive statutory grant. The grant of attorney fees in section 556 is permissive, not presumptive, and therefore the trial court did not exceed the bounds of its discretion by awarding attorney fees to Lourie or by declining to award attorney fees to Wainwright.

The entry is:

Judgment affirmed.

Dissenting: DANA, CALKINS, and LEVY, JJ.

CALKINS, J., with whom DANA and LEVY, JJ., join, dissenting.

[¶ 21] I respectfully dissent from the Court's decision on Wainwright's cross-appeal to affirm the denial of attorney fees to Wainwright.

[¶ 22] I would vacate the Superior Court's denial of attorney fees because it abused its discretion in denying attorney fees to Wainwright by (1) weighing the relative merits of Maietta's claims against Wainwright and Lourie and concluding, without support in the record, that there was more merit to the claim against Wain-

wright; (2) distinguishing between Wainwright and Lourie on the basis of Lourie's attorney/agent role; and (3) imposing impermissible burdens on Wainwright that were not imposed on Lourie. Alternatively, I would construe the anti-SLAPP[6] statute as granting discretion to the trial court to deny attorney fees only when special circumstances exist that would make an award unjust, and no such circumstances exist here.

[¶ 23] My reasons for vacating are premised on the policy considerations of the anti-SLAPP statute, 14 M.R.S.A. § 556 (2003), which we described in *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842, 846. In enacting the Maine anti-SLAPP statute, the Legislature intended to deter the filing of lawsuits whose purpose is to intimidate defendants from petitioning the government to redress grievances or from making statements designed to elicit public support for the defendants' position in the controversy under consideration before the governmental body. A SLAPP is effective intimidation, even though it has no chance of succeeding on the merits, because defendants have to pay lawyers to defend the SLAPP, thereby diverting their resources from petitioning the government. The mere threat of a SLAPP, even when it will be dismissed pursuant to section 556, is intimidating because of attorney expenses. If SLAPP plaintiffs are successful in defeating the SLAPP defendants' request for attorney fees, they will have defeated the purpose of the anti-SLAPP statute.

## I. THE COURT ABUSED ITS DISCRETION IN DENYING ATTORNEY FEES TO WAINWRIGHT

[¶ 24] The trial court's basis for granting attorney fees to Lourie and denying them to Wainwright is set forth succinctly in its decision as follows:

The awarding of costs and reasonable attorney's fees requires additional analysis. [Footnote omitted.] One of the ways in which the Plaintiffs' case resembles a "typical" SLAPP suit is that the Plaintiffs sued Defendant Lourie in his capacity as the attorney/agent of Defendant Wainwright. In this respect, it appear that the Plaintiffs were attempting to intimidate or silence an attorney who was representing a client with potentially legitimate concerns involving property he sold with conditions to the City of South Portland. Therefore, awarding costs and reasonable attorney's fees to Defendant Lourie is appropriate.

On the other hand, Defendant Wainwright has not demonstrated that the Plaintiffs never intended to win their case, or were actually attempting to punish him for speaking out on a public matter, or were forcing him to incur excessive legal fees. Arguably there was some merit to the Plaintiffs' claims against Defendant Wainwright concerning, say, allegations of improper billing. Even though the anti-SLAPP statute applies in the present case, the court in the exercise of its discretion will not award costs and reasonable attorney's fees when the underlying policy rationale for the anti-SLAPP statute has not been met. Therefore such costs and fees are not awarded to Defendant Wainwright.

[¶ 25] By denying attorney fees to Wainwright, the trial court abused its discretion in three different ways. First, to the extent that it weighed the merits of Maietta's claims against the two defendants and concluded that the claim against Wainwright was stronger, the conclusion is not supported by the record. Second, the trial court abused its discretion by making a

---

**6.** "SLAPP" stands for strategic lawsuit against public participation.

distinction between Lourie and Wainwright on the basis of Lourie's role as the attorney/agent of Wainwright, and that distinction is not warranted by the purposes of the anti-SLAPP statute. Third, the trial court abused its discretion by imposing impermissible burdens on Wainwright for the recovery of attorney fees that it did not impose on Lourie.

## A. Merits

[¶ 26] In spite of the fact that Maietta's allegations against Wainwright and Lourie are almost identical, this Court and the trial court conclude that the merits of Maietta's claims against Wainwright are stronger than the merits of Maietta's claims against Lourie and that the difference justifies an award of attorney fees for Lourie but not for Wainwright. The trial court focused on Maietta's allegation that Wainwright had accused Maietta of improper billing, while this Court concentrates on Maietta's allegation that Wainwright "publicly (and falsely) accused [Maietta] of stealing, a serious criminal allegation which could irreparably injure its professional reputation." Both allegations form the basis for Maietta's defamation claims against Wainwright and Lourie.[7]

[¶ 27] To fully explore whether the defamation claim against Wainwright had more merit than the defamation claim against Lourie, it is necessary to provide a more extensive recitation of the record. The evidentiary record, consisting primarily of three affidavits provided by Maietta, does not support a determination that Maietta's defamation claim against Wainwright had more merit than the claim against Lourie. The affidavits demonstrate that the statements were privileged, and they fail to demonstrate that Wainwright made the statements publicly. One affidavit is by the City's attorney, and it authenticates and attaches letters received from Lourie. Another is by the city manager detailing the history of the City's acquisition of the Wainwright Farms land and the contract with Maietta to construct the recreational complex on the land. The third is the affidavit of Maietta's vice-president.

[¶ 28] The city manager's affidavit lists and attaches letters from Lourie to the City and letters from City officials to Lourie. In addition, various documents related to the Maietta contract to build the recreation field are attached to the manager's affidavit, as is a lengthy chronology of events. The chronology includes Wainwright's first statement in July to a member of the City Council that Maietta was "using the City's loam on the sides of the access road to Wainwright Farms." The manager's chronology also describes a meeting on August 27, 2002, in the city manager's office, between Wainwright, Maietta's vice-president, the city manager, and the parks and recreation director, during which Wainwright "stated that he felt that the City had violated the deeded covenant of the restriction to removing loam

---

7. Maietta's complaint contained four claims against Lourie and Wainwright: defamation, intentional infliction of emotional distress, false light, and interference with an advantageous relationship. The elements of a defamation claim are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) special harm or actionability regardless of special harm. *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189,

1193. The false light claim is similar and requires (1) the actor giving publicity to a matter that places another in a false light; (2) when the false light would be highly offensive to a reasonable person; (3) the actor knowing of, or acting in reckless disregard to, the falsity and the false light in which the other would be placed; and (4) publicity means communication to the public at large or to enough people that it is substantially certain to become public knowledge. *Id.* ¶ 17, 752 A.2d at 1197.

from the fields" and inferring that Maietta had taken loam.

[¶ 29] The Maietta vice-president's affidavit describes the construction on the recreational complex and denies that Maietta ever billed the City for loam. The affidavit avers that Maietta removed some loam to Maietta property for temporary storage to keep children from playing on it. The affidavit also recounts the August 27 meeting where "Wainwright accused Maietta Construction of stealing loam from the Wainwright Farms property" and at which the vice-president denied the accusation.

[¶ 30] There is nothing in the affidavits or attachments that indicates the August 27 meeting was a public meeting. There is nothing in the record that suggests that Wainwright personally went to the media or members of the public to make his accusations against Maietta. His accusations were made to City officials or council members.

[¶ 31] As stated above, the trial court gave "allegations of improper billing" as the basis for its conclusion that Maietta's defamation claim against Wainwright had more merit than the claim against Lourie. However, the only accusation of improper billing appears in a September 27, 2002, letter from Lourie to the mayor and council members, which is attached to the City attorney's affidavit. In this letter, Lourie asserts that Maietta's use of loam from Wainwright Farms "appears to have been a double payment by the City to Maietta, where no payment should have been made at all." [8] This sentence in Lourie's letter is not support for a conclusion that Maietta's defamation claim against Wainwright has more merit than Maietta's claim against Lourie. The allegation of improper billing was made by Lourie, albeit on behalf of Wainwright. Furthermore, it was an accusation made to City officials about City business.[9] For the defamation claim concerning the accusation of improper billing to have more merit against Wainwright than Lourie, the record would have to show some differentiation between the two defendants concerning the improper billing accusation. Other than the fact that Lourie was the attorney/agent for Wainwright, there is no difference.

[¶ 32] With regard to the accusation of stealing loam, relied upon by this Court in concluding that Maietta's defamation claim against Wainwright had more merit than Maietta's claim against Lourie, the Court states: "While there is direct evidence that Wainwright publicly accused Maietta of stealing loam, it is not clear that Lourie made such an assertion." The record demonstrates that Wainwright's accusations were made to City officials and council members, not to members of the public. The matter became public with the newspaper accounts of Lourie's September 27 letter. Again, there is virtually no distinction between Wainwright and Lourie concerning the accusation of theft, except that Lourie was acting on behalf of Wainwright.

[¶ 33] The record simply does not support the trial court's conclusion of "[a]rguably ... some merit to [Maietta's] claims against ... Wainwright concerning ... allegations of improper billing." Nor does the record support this Court's assertion that the merits of the defamation claim

---

8. The complaint includes an allegation that Wainwright and Lourie embarked "on a campaign publicly accusing [Maietta] of stealing loam, and falsely charging the City of South Portland for loam used in construction of the Recreation Complex in excess of $100,000."

9. The letter was quoted in press accounts, but the record does not indicate whether it was Lourie or Wainwright or someone else that brought the letter to the attention of the press. However, the trial court found that it was Lourie who discussed the events with the media.

against Wainwright are stronger than the merits against Lourie.

[¶ 34] Actually, neither defamation claim has merit. Both Lourie and Wainwright's accusations are privileged because they were to City officials complaining about the implementation of a City contract. *See* RESTATEMENT (SECOND) TORTS § 594 (1977) ("An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.") *quoted in Rice v. Alley,* 2002 ME 43, ¶¶ 22–25, 791 A.2d 932, 936–37 (holding that a club member's accusation to the membership that another was stealing was conditionally privileged). The anti-SLAPP statute itself is the basis for a conditional privilege when the communication is one within the statutory definition of "right of petition." 14 M.R.S.A. § 556. That definition includes statements likely to "enlist public participation." Because the statements in question were privileged, the defamation claims against Wainwright and Lourie were equally without merit.

[¶ 35] In summary, this Court's conclusion that the merits of Maietta's defamation claim against Wainwright were relatively stronger than the merits of its claim against Lourie is not borne out by the record, and the trial court's conclusion that Maietta's claim against Wainwright arguably had more merit is not supported by the record and is, therefore, an abuse of discretion.

### B. Attorney/Agent

[¶ 36] Distinguishing between Lourie and Wainwright on the basis that one is the attorney/agent of the other is not a sufficient ground for denying fees and constitutes an abuse of discretion. The dis-

tinction does not serve the purpose of the anti-SLAPP statute, which is to protect a citizen who is petitioning the government from intimidation. Sometimes, as here, citizens obtain the assistance of a lawyer for the petitioning activities. When a SLAPP is brought against the citizen and the lawyer, both may need to obtain the services of another attorney to defend against the SLAPP. The cost of retaining an attorney to bring the special motion to dismiss the SLAPP can be substantial and, in itself, chill the right to petition. It gives the citizen little comfort to know that the lawyer, who was helping the citizen petition the government, will get attorney fees. Such a distinction between the attorney/agent and the citizen/principal may foster a policy of protecting attorneys or of making attorneys more likely to help citizens in petitioning efforts, but it does little to foster the policy of protecting the citizen from intimidation or of encouraging a citizen's public participation.

[¶ 37] If the basis for the distinction between the attorney/agent and the citizen/principal is that the attorney/agent is only acting on behalf of the principal, then the distinction will apply to all situations where the citizen/principal hires a lawyer to assist in the petitioning of the government and where, as here, the allegations in the SLAPP against both the citizen and his attorney are the same. This distinction will always place the principal/citizen more at risk than the attorney/agent engaged to assist the principal/citizen because the principal is responsible for the authorized actions of the agent.

[¶ 38] There is simply no basis in the language, spirit, or purpose of the anti-SLAPP statute for giving a court the discretion to grant or deny attorney fees based on the status of the SLAPP defendant as an attorney/agent or a citizen/principal. Such a distinction has the danger of

turning the attorney fee provision of the anti-SLAPP statute into an attorney protection statute and thwarting its purpose of protecting the citizen from intimidation.

## C. Increased Burdens

[¶ 39] In addition to the rationale in the Court's opinion for granting attorney fees to Lourie while denying them to Wainwright, the trial court stated that Wainwright failed to demonstrate that Maietta never intended to win the action against him. The trial court also said that Wainwright failed to demonstrate that Maietta's lawsuit was an attempt to punish him for speaking out or to require him to incur excessive attorney fees. The court abused its discretion in imposing these burdens on Wainwright, particularly because the burdens are not customarily imposed and were not imposed on Lourie.

[¶ 40] SLAPP defendants should not have to demonstrate the SLAPP plaintiffs' intentions. Furthermore, such a showing would be difficult to make at the stage of the special motion to dismiss. The policy behind the anti-SLAPP statute is to swiftly identify a SLAPP case and dismiss it so that the defendants' petitioning activity can continue. L.D. 781, Statement of Fact (117th Legis. 1995) (stating that the anti-SLAPP statute is meant to allow "the motion [to be] heard as soon as possible and if the motion to dismiss is granted, to have the case dismissed as soon as possible"). To impose a greater burden of proof on SLAPP defendants for an award of attorney fees than is necessary to succeed on the special motion is contrary to the policy behind the statute. Requiring Wainwright to demonstrate that Maietta was attempting to punish him or force him to incur excessive legal fees places a further impermissible burden on a SLAPP defendant.

It is highly doubtful that Wainwright could make such a showing without engaging in discovery, which defeats the purpose of the special motion to dismiss.[10] The court abused its discretion by imposing these additional burdens on Wainwright.

[¶ 41] For these reasons, I conclude that the trial court abused its discretion in denying attorney fees to Wainwright, and I would vacate and remand for a determination of the amount of fees.

## II. THE STATUTE SHOULD BE CONSTRUED TO GRANT ATTORNEY FEES EXCEPT IN SPECIAL CIRCUMSTANCES

[¶ 42] As an alternative ground for vacating the judgment, I would interpret the anti-SLAPP statute to give the trial courts less discretion than the Court's opinion does in determining when fees are to be awarded. I analogize to the federal civil rights attorney fee statute, 42 U.S.C. § 1988.

[¶ 43] The anti-SLAPP statute is a civil rights statute because it protects the rights of citizens to petition their government for grievances and to express their grievances to the public in order to obtain public support. It differs from the predominant federal civil rights statute, 42 U.S.C. § 1983, in that it is more of a shield than a sword, and it applies against private actors, whereas § 1983 enforces civil rights against persons acting under color of state law. Attorney fees are awarded to prevailing parties in federal civil rights actions pursuant to 42 U.S.C. § 1988. Section 1988(b) provides that a court "in its discretion, may" award attorney fees. Following federal authority, we have construed the phrase "in its discretion, may" in § 1988 as meaning that a prevailing

---

**10.** The anti-SLAPP statute requires that all discovery be stayed once the special motion to dismiss is filed unless the court orders specific discovery upon a showing of good cause. 14 M.R.S.A. § 556 (2003).

party ordinarily recovers attorney fees "unless special circumstances would render such an award unjust." *Bangs v. Town of Wells*, 2003 ME 129, ¶ 17, 834 A.2d 955, 960 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Furthermore, the burden of demonstrating the special circumstances is on the party opposing the fee award. *See Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991); *Herrington v. County of Sonoma*, 883 F.2d 739, 744 (9th Cir.1989); *J & J Anderson, Inc., v. Town of Erie*, 767 F.2d 1469, 1474 (10th Cir.1985).

[¶ 44] I recognize that the Legislature could have chosen to use the word "shall" instead of "may" with regard to attorney fees in the anti-SLAPP statute.[11] In my opinion, by using the word "may," the Legislature decided not to compel the award of fees in all cases, but gave courts the ability to withhold fees when the circumstances warrant. The Legislature knew that in exercising its discretion a court would apply relevant case law and analogize to similar statutes.

[¶ 45] Because the anti-SLAPP statute, like § 1988, is concerned with providing attorney fees for enforcing civil rights, it is likely that the Legislature intended that the attorney fee provision be interpreted in the same manner as § 1988. I would interpret the anti-SLAPP statute similarly as the same discretionary language · in § 1988 and require the imposition of attorney fees to a party who successfully obtains a dismissal of the SLAPP unless the court finds "special circumstances."

[¶ 46] The anti-SLAPP statute cannot completely fulfill the Legislature's purpose if it only works to dismiss a SLAPP at a relatively early stage.[12] Unless the SLAPP filer knows that it will be routinely required to pay the attorney fees of the defendant, it will be worthwhile to take the gamble of filing the SLAPP. Such a result would undermine the policy of the anti-SLAPP statute.

[¶ 47] As set forth above, the Superior Court articulated several reasons for denying fees to Wainwright. However, just as none of its stated conclusions justify distinguishing between Wainwright and Lourie, none of them constitute special circum-

11. Most states with an anti-SLAPP statute mandate attorney fees by using the word "shall" or similar language. Cal. Civ. Proc. Code § 425.16(c) (Deering, LEXIS through 2003–04 3d extra sess.); Fla. Stat. ch. 768.295(5) (Bender, LEXIS through 2003 sess.); 34 Haw. Rev. Stat. § 634F–2(8)(B) (Michie, LEXIS through 2003 sess.); Ind. Code Ann. § 34–7–7–7 (Burns, LEXIS through 2003 sess.); La. Code Civ. Proc. Ann. art. 971(B) (LEXIS through 2003 sess.); 231 Mass. Gen. Laws § 59H (Bender, LEXIS through Mar. 25, 2004); Minn. Stat. Ann. § 554.04(1) (LEXIS through 2003 legislation); Nev. Rev. Stat. Ann. § 41.670(1) (Bender, LEXIS through 2003 legislation); N.M. Stat. Ann. § 38–2–9.1(B) (Michie, LEXIS through July 16, 2003); Ore. Rev. Stat. § 30.144(3) (LEXIS through 2001 sess.); R.I. Gen. Laws § 9–33–2(d) (LEXIS through 2003 sess.); Tenn. Code Ann. § 4–21–1003(c) (LEXIS through 2003 sess.); and

Wash. Rev. Code Ann. § 4.24.510 (Bender, LEXIS through 2003 3d spec. sess.).

States, in addition to Maine, that use "may" include: Del. Code Ann. tit. 10, § 8138(a)(1) (LEXIS through 2004 sess.); Ga. Code Ann. § 9–11–11.1(b) (LEXIS through 2003 sess.); Neb. Rev. Stat § 25–21, 241 (Bender, LEXIS through 2003 sess.); N.Y. Civ. Rights § 70–a(1)(a) (Bender, LEXIS through Mar. 10, 2004); and Utah Code Ann. § 78–58–105(1)(a) (Bender, LEXIS through 2003 2d spec. sess.).

12. As this lawsuit demonstrates, the anti-SLAPP statute, in practice, does not work particularly expeditiously. Over· four months elapsed between the filing of the special motion to dismiss and an argument on the motion. The delay demonstrates, at least partially, that even the best intentions of the Legislature to expedite a process cannot be put into practical effect without the appropriate resources.

stances. For the same reasons I give above for my viewpoint that the court abused its discretion in denying fees to Wainwright, I determine that the Superior Court's conclusions do not support a finding of special circumstances. Furthermore, I find nothing in the record that demonstrates that an award of attorney fees to Wainwright would be unjust.