STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. CV-13-369


DANA DESJARDINS,

          Plaintiff

v.                                                          ORDER

STATE OF MAINE
Cumberland. ss. Clerk's Office

SEP 28 2017
9:27 AM
RECEIVED

MICHAEL REYNOLDS,

          Defendant


     Before the court is a motion by defendant Michael Reynolds for attorney's fees pursuant

to 14 M.R.S. § 556. That statute provides in pertinent part that if the court grants a special

motion to dismiss under Maine's anti-SLAPP statute, "the court may award the moving party

costs and reasonable attorney's fees, including those incurred for the special motion and any

related discovery matters."

     Reynolds prevailed on a special motion to dismiss in this court's order filed on June 19,

2015, a ruling that was affirmed on appeal by the Law Court. *Desjardins v. Reynolds,* 2017 ME

99. Reynolds now seeks attorney's fees for work performed in connection with the defense of

this action in federal court (after it was removed), in the First Circuit, in this court (upon remand

from the federal court), and on the appeal to the Law Court from this court's decision.[1]


Entitlement to Attorney's Fees

     As set forth above, 14 M.R.S. § 556 states that the court "may" award a successful

movant under the anti-SLAPP statute attorney's fees and costs. In *Maietta Construction Inc. v.*

---

[1] The proceedings in this case prior to this court's June 19, 2015 order are set forth in that order.

*Wainwright,* 2004 ME 53 ¶¶ 17, 20, 847 A.2d 1169, the Law Court rejected the proposition that the statute creates a presumption that attorney's fees should be awarded to a successful movant in the absence of special circumstances. It instead emphasized that the award of attorney's fees under 14 M.R.S. § 556 is discretionary and that it is appropriate to consider the merits of the case in deciding whether to award attorney's fees. 2004 ME 53 ¶¶ 12, 18.

Assessing the Merits

Plaintiff Dana Desjardins argues that his claims have been found to be meritorious because this court found that, for purposes of the special motion to dismiss, Desjardins met his burden of showing that Reynolds's petitioning activity was devoid of factual support. July 19, 2015 order at 3-4. That determination, however, meant only that Desjardins provided prima facie proof – "some evidence" – that Reynolds's report to the Cumberland County Sheriff's office was unfounded. *See Nader v. Maine Democratic Party ('Nader I"),* 2012 ME 57 ¶¶ 33-35, 41 A.3d 551. As the Law Court noted in *Nader v. Maine Democratic Party,* "prima facie proof is a low standard that does not depend on the reliability or credibility of the evidence." 2012 ME 57 ¶ 34, quoting *Cookson v. State,* 2011 ME 53 ¶ 8, 17 A.3d 1208.

In weighing the evidence and assessing its probative value, *see Maietta,* 2004 ME 53 ¶ 13, the court has reviewed the affidavits and other evidence submitted by the parties in connection with the special motion. This includes the following:

• Affidavits by Reynolds, Nathan White (Road Commissioner of the Town of Raymond), Catherine Gosselin (Deputy Chief, Town of Raymond Emergency Medical Services), Bruce Tupper (Fire Chief, Town of Raymond), and Don Willard (Raymond Town Manager, originally

2

named as a co-defendant in this action[2]) stating that that they had smelled a strong odor of alcohol from Desjardins at one or more town meetings and that in two cases, they had observed erratic driving on his part. Reynolds stated that he had been asked by residents and town officials to convey to the Cumberland County Sheriff's Office concerns that Desjardins may have driving while impaired.

• Two emails from Reynolds to the Sheriff on December 12, 2012. The first of those requested the opportunity to speak to the Sheriff's office with respect to "a public safety issue," which Reynolds confirmed in the second email involved Dana Desjardins.

• Emails from Sheriff Joyce to Deputy Sheriff Goulet dated December 21, 2012 and January 5, 2013 stating that complaints had been received that Desjardins had been driving while intoxicated and had attended Selectmen's meetings intoxicated. The Sheriff suggested that a deputy watch to see if Desjardins's vehicle was being operated erratically around the time of the next meeting.

• A subsequent email from Reynolds to the Sheriff on January 7, 2013 indicating that there had been a conversation between Reynolds and the Sheriff after the first emails. The email reminded the Sheriff that the next meeting was on January 8 and stated that if a deputy would be available to drop by, "that would be great."

• A January 9, 2013 email from Reynolds to the Sheriff stating that Desjardins had not been visibly intoxicated at two meetings that week. The email mentioned a rumor that someone from the Sheriff's office had spoken to Desjardins, and stated that since Desjardins had appeared at two meetings without raising any public safety concerns, Reynolds hoped the rumor was true.

---

[2] The claims against Willard were dismissed by the federal district court after the case was removed and were thereafter dropped by Desjardins in the course of his appeal to the First Circuit from Judge Torresen's June 20, 2014 order.

3

• An affidavit from Dana Desjardins stating that he had not attended any Selectman's meetings intoxicated, that he seldom drinks alcohol, and any claims that he was driving under the influence were false. In his affidavit Desjardins surmises that Reynolds and Willard had developed an animus against him based on his outspokenness at town meetings and because of disputes dating from January and May of 2011 – more than 18 months before Reynolds's December 14, 2012 email.

• Affidavits from Charles Leavitt, Peter Leavitt, John Russo, and Julie Southerland stating that they were friends and acquaintances of Desjardins who were involved with Town government, denying that they had ever detected any signs of intoxication, and specifically denying that any indications of intoxication were apparent at a town meeting where persons whose affidavits had been submitted by Reynolds stated that they had observed indications of intoxication. Charles Leavitt also stated his belief that false accusations had been made against Desjardins because of his outspokenness at town meetings and because of the two disputes mentioned by Desjardins that had occurred in 2011.

In assessing the case, the court concludes that there are two competing considerations. On the merits of the case, there is a dispute as to whether there was an adequate basis for Reynolds's report to law enforcement that Desjardins may have been operating under the influence. Nevertheless, there is no evidence that Reynolds ever voiced his suspicions or concerns in public or took any action other than his report to law enforcement. The evidence offered by Desjardins that Reynolds had an ulterior motive is at best speculative. Moreover, Reynolds's January 9 email – expressing that he had observed no indications of intoxication at recent meetings and the hope that the issue had been resolved by a conversation between Desjardins and a Sheriff's deputy – is inconsistent with the contention that Reynolds was engaged in any kind of vendetta.

4

Moreover, the extent of the asserted harm experienced by Desjardins was that he was (privately) advised that he had been red-flagged by the Sheriff's office and his vehicle was stopped on one occasion when he was given a warning for going 5 mph above the speed limit. There is no evidence that any allegedly defamatory communication was ever made public or was made to anyone other than law enforcement.

In sum, an assessment of the merits favors Reynolds, and a reasonable argument can be made that – where the Legislature has departed from the American rule in authorizing attorney's fees – he should be entitled to recoup at last some portion of the substantial attorney's fees incurred in almost three years of litigation. Reynolds was unsuccessfully sued for actions that the Legislature has defined as "a party's exercise of its right of petition." 14 M.R.S. § 556.

On the other hand, in litigating this case, Desjardins was pursuing a legal issue that the First Circuit identified as unresolved based on tension between *Schelling v. Lindell*, 2008 ME 59, 942 A.2d 1226, and *Nader v. Maine Democratic Party*, 2012 ME 57, 41 A.3d 551.[3] Moreover, this is not a case of a deep-pocketed plaintiff bringing suit in order to bully a little guy for opposing the plaintiff's plans.

On balance, therefore, and particularly because there is no evidence that Reynolds is personally out of pocket for successfully defending this action, the court concludes that no attorney's fee shall be awarded.[4]

---

[3] *See Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir 2015).

[4] Reynolds is also seeking $400 in costs for the removal fee to federal court. Costs paid to a federal court are not recoverable as costs pursuant to 14 M.R.S. § 1502-B.

The entry shall be:

Defendant Reynolds's motion for attorney's fees and his application for costs is denied.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: September 27, 2017

_____
Thomas D. Warren
Justice, Superior Court

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-369

DANA DESJARDINS,

Plaintiff

v.

ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUN 29 2015

RECEIVED

MICHAEL REYNOLDS,

Defendant

Before the court is a special motion to dismiss by defendant Michael Reynolds under Maine's anti-SLAPP statute, 14 M.R.S. § 556.

Plaintiff Dana Desjardins commenced this suit in the Maine Superior Court in August 2013. At that time it included section 1983 claims and a number of state law claims against Reynolds and co-defendant Donald Willard.

In September of 2013 the case was removed to the U. S. District Court for the District of Maine, and defendants filed a motion to dismiss the section 1983 claims and a special anti-SLAPP motion to dismiss the state law tort claims. In a detailed order filed June 20, 2014, the federal court (Torresen, J.) dismissed the section 1983 claims and granted the defendants' anti-SLAPP motion. *Desjardins v. Willard,* Civil No. 2:13-cv-00338-NT, reported at 2014 U.S. Dist. LEXIS 84782.[1]

That decision was appealed to the First Circuit, which on January 23, 2015 affirmed the dismissal of Desjardins's federal claims but vacated the dismissal of Desjardins's defamation and

---

[1] A copy of Judge Torresen's 41-page order is also contained in the record before this court as an addendum to Desjardins's First Circuit Brief (Tab D in the binder of federal pleadings filed by the parties).

false light claims against Reynolds and directed that those claims should be remanded to state court. *Desjardins v. Willard,* 777 F.3d 43 (1st Cir. 2015).[2] The First Circuit concluded that Reynolds's anti-SLAPP motion should be remanded to the Maine courts because it concluded that there were issues of state law – specifically what it described as a tension between the Law Court's decision in *Schelling v. Lindell,* 2008 ME 59, 942 A.2d 1226, and its subsequent decision in *Nader v. Maine Democratic Party ('Nader I"),* 2012 ME 57, 41 A.3d 551 – that should be resolved by the Maine courts. 777 F.3d at 45-46.

By agreement, rather than rebriefing the issues, the parties have submitted copies of the legal memoranda, declarations, affidavits, and exhibits filed by the parties in connection with the anti-SLAPP motion filed on behalf of Reynolds in the U.S. District Court, along with copies of the appellate briefs the parties filed on the appeal to the First Circuit.

Application of the Anti-SLAPP Statute

Maine's anti-SLAPP statute provides that when a plaintiff's claims are based on a defendant's exercise of the right of petition under the U.S. or Maine Constitution – conduct which is defined broadly under the statute – the defendant may bring a special motion to dismiss. 14 M.R.S. § 556. The statute further provides that the special motion to dismiss shall be granted "unless the [plaintiff] shows that the [defendant's] exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the [defendant's] acts caused actual injury to [plaintiff]". 14 M.R.S. § 556.

---

[2] The defamation and false light claims against Reynolds were the only remaining claims in the case because Desjardins had withdrawn his NIED and IIED claims during the proceedings before Judge Torresen and had withdrawn his claims against Willard during the course of the appeal. 777 F.3d at 44 nn. 1 and 2.

2

The court's first step in considering Reynolds's special motion to dismiss under 14 M.R.S. § 556 is to determine whether Desjardins's defamation and false light claims are based on Reynolds's exercise of his constitutional right of petition. If so, the court needs to determine whether Desjardins has sufficiently demonstrated that Reynolds's petitioning activity was (1) devoid of any reasonable factual support or any arguable basis in law and (2) that Reynolds's alleged actions caused actual injury to Desjardins.

The facts contained in the record, including the countervailing evidence offered by Reynolds and by Desjardins, are outlined in Judge Torresen's order, 2014 U.S. Dist. LEXIS 84782, and the court will not reiterate those facts here.

Reynolds has demonstrated that Desjardins's defamation and false light claims are based on alleged actions which fall within the definition of "a party's exercise of its right of petition" contained in 14 M.R.S. § 556. *See Schelling v. Lindell,* 2008 ME 59 ¶ 12 (Maine Legislature intended to define activity protected by the anti-SLAPP statute "in very broad terms"). Desjardins is specifically complaining about reports that Reynolds made to the Cumberland County Sheriff's office. These were "written or oral statements . . . submitted to" the Sheriff's office (an executive body) and statements "reasonably likely to encourage consideration or review of an issue" by the Sheriff's office. The court is therefore in agreement with Judge Torresen that Reynolds has made the initial showing required under 14 M.R.S. § 556. *See Desjardins v. Willard,* 2014 U.S. Dist. LEXIS 84782, *53-*54 (order at p. 35).

The court concludes that under the second step of the analysis required under 14 M.R.S. § 556 Desjardins has met his burden of showing that Reynolds's petitioning activity was "devoid of any reasonable factual support." On this issue all that is required is that Desjardins make a

3

prima facie showing – at least "some evidence" – that at least one of Reynolds's petitioning actions was devoid of any reasonable factual support. *Nader I*, 2012 ME 57 ¶¶ 33-35.

Actual Injury

That leaves the issue which led to the First Circuit's decision to have this case remanded to state court – whether Desjardins has met the additional requirement of demonstrating that Reynolds's actions caused him "actual injury" within the meaning of 14 M.R.S. § 556. The actual injury asserted by Desjardins consists of (1) the attorneys fees he incurred in order to discover the source of the allegedly false stories and reports that were made about him, (2) the "humiliation and embarrassment" he experienced when he was the subject of a traffic stop on January 8, 2013, and (3) the "great emotional distress" he suffered when he learned that he had been red flagged by the Sheriff's Department. October 22, 2013 Desjardins Affidavit ¶¶ 33-35.

In *Schelling v. Lindell*, the Law Court ruled a plaintiff faced with an anti-SLAPP motion must show "a reasonably certain monetary valuation" of the injury that is claimed. 2008 ME 59 ¶ 17. It also ruled that presumed injury in defamation cases does not qualify as "actual injury" for purposes of the anti-SLAPP statute:

> The statutory requirement that a plaintiff must demonstrate actual injury is not satisfied by the common law rule in libel cases that a plaintiff is not required to demonstrate that she has suffered any specific damages in order to recover on her claim . . . . Neither is the actual injury requirement satisfied by the common law rule that in slander cases, a plaintiff need not demonstrate any specific damages if the alleged defamation relates to her trade or business.

2008 ME 59 ¶ 18 (citations omitted). Perhaps most importantly for purposes of this case, the Court also ruled that loss of sleep, mental suffering, and embarrassment are not legally sufficient to meet the "actual injury" requirement under 14 M.R.S. § 556. *Id.*

4

The Court went on to state that a plaintiff who cannot show economic damages can only meet the actual injury requirement if he is able to show the kinds of damage required in Maine to recover for purely emotional harm. *Id.* ¶ 27. This would require emotional distress "so severe that no reasonable person could be expected to endure it." *Id.* ¶ 25, citing *Curtis v. Porter,* 2001 ME 158 ¶ 10, 784 A.2d 18.

Applying the *Schelling* precedent to the facts in this case, Desjardins cannot meet the actual injury requirement under 14 M.R.S. § 556 by relying on the common law doctrine that a defamation plaintiff may recover damages under certain circumstances even without proof of economic damages – which are referred to in the law of defamation as "special harm."[3] The court also agrees with Judge Torresen that Desjardins's allegations of embarrassment, humiliation, and emotional distress do not constitute the kind of mental distress that would qualify as sufficiently severe that "a reasonable person, properly constituted, would be unable to adequately cope with the mental stress engendered by the circumstances . . ." *Desjardins v. Willard,* 2014 U.S. Dist. LEXIS 84782, *56-*57 (order at pp. 37-38); *Schelling v. Lindell,* 2008 ME 59 ¶ 24, quoting *Culbert v. Sampson's Supermarket Inc.,* 444 A.2d 433, 437 (Me. 1982). As far as the court can tell, Desjardins conceded the latter point when he withdrew his claims for intentional and negligent infliction of emotional distress before Judge Torresen. *Desjardins v. Willard,* 2014 U.S. Dist. LEXIS 84782, *3-*4 & n. 3 (order at p. 3 n.3).

Damages recoverable on a false light claim include harm to reputation, emotional distress, and any economic damages resulting from the invasion of privacy. Restatement 2d Torts § 652H and cmt. a. However, Desjardins has not demonstrated any harm to reputation in his affidavit, let alone any harm to reputation that could be reduced to a "reasonably certain monetary valuation." *Schelling,* 2008 ME 59 ¶ 17. Moreover, under *Schelling* his claims of

---

[3] *See* Restatement 2d Torts § 575 cmt. b; *Withers v. Hackett,* 1998 ME 164 ¶ 9, 714 A.2d 798.

5

embarrassment, humiliation, and emotional distress from the traffic stop and from allegedly being red flagged by the Sheriff's office are insufficient whether they are claimed as damages for defamation or for a false light invasion of privacy. *Id.* 2008 ME 59 ¶ 18.

Desjardins claims that he incurred economic damages that would qualify as actual injury under the anti-SLAPP statute because he had to incur attorneys fees in order to determine the source of the allegedly false reports made to the Sheriff's office. October 22, 2013 Desjardins Affidavit ¶ 33. However, this is unavailing because neither attorneys fees nor investigative costs constitute compensable damages under the law of defamation or false light invasion of privacy. While attorneys fees may be recoverable in cases where a party was the subject of a wrongful prosecution and had to hire counsel to defend himself, *see* Restatement 2d Torts § 671(b) and cmt. c, no legal proceedings were brought against Desjardins in this case.[4]

Thus, under *Schelling v. Lindell* Desjardins has failed to demonstrate that he was caused "actual injury" within the meaning of the anti-SLAPP statute. The remaining question is whether *Schelling* is still good law in light of the Law Court's subsequent decision in *Nader I* and in particular in light of the concurring opinion of Justices Silver and Jabar. *Nader I,* 2012 ME 57 ¶¶ 40-52. The concurring opinion questioned whether the "actual injury" requirement in the anti-SLAPP statute could be constitutionally interpreted to deny plaintiffs the right to proceed on claims that would be cognizable under the common law, and specifically mentioned *Schelling v. Lindell* as a case where an "otherwise valid" claim had been dismissed. 2012 ME 57 ¶ 46.

---

[4] In *Aqua Cove Mortgage Corp. v. Auritt,* CV-11-499 (Superior Ct. Cumberland Nov. 25, 2013), this court found that the defendants had instigated a baseless proceeding before the Maine Human Rights Commission in violation of a court injunction. The attorneys fees incurred by Aqua Cove constituted actual injury in that case because, just as in a claim for malicious prosecution, they were compensable under the rule governing contempt. *See also* M.R.Civ.P. 66(d)(3)(C) – which expressly permits assessment of attorneys fees.

This court is not free to ignore Law Court precedent and will adhere to the law as stated in Schelling *v. Lindell* for two reasons. First, the majority opinion in *Nader I* did not express any reservations about the *Schelling* decision. It cited *Schelling* at least five times, *see* 2012 ME 57 ¶¶ 14-16, 18, and it emphasized in a footnote that the issue beforie it was different than the issue in *Schelling*. 2012 ME 57 ¶ 20 n.6. As a result, the court does not see any indication that the justices who joined the majority opinion in *Nader I* shared the doubts expressed by the concurring opinion as to the correctness of *Schelling*.

Second, the Legislature has the authority to modify the common law, and the Law Court appears to have concluded that it did so to the extent necessary to provide a remedy against so-called SLAPP suits. *See Maietta Construction Inc. v. Wainwright*, 2004 ME 53 ¶ 10, 847 A.2d 1169. That aspect of the *Maietta* decision was not overruled in *Nader I*.

Whether *Schelling v. Lindell* should be reconsidered in light of the arguments expressed in the concurring opinion in *Nader I* and the question of whether the anti-SLAPP statute has resulted in the unintended consequences discussed in the concurring opinion, *see* 2012 ME 57 ¶ 45, are issues for the Law Court.

The entry shall be:

> The special motion to dismiss filed by defendant Michael Reynolds pursuant to 14 M.R.S. § 556 is granted, and the remaining claims in this case against Reynolds are dismissed. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 2̲9̲, 2015

_____
Thomas D. Warren
Justice, Superior Court

7

**CLERK OF COURTS**
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

DANIEL MURPHY ESQ
BERNSTEIN SHUR
PO BOX 9729
PORTLAND ME 04104-5029

*Defendants Attorney*

---

**CLERK OF COURTS**
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

JOHN CAMPBELL ESQ
CAMPBELL & ASSOCIATES
59 BAXTER BOULEVARD
PORTLAND ME 04101

*Plaintiffs Attorney*